IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KOJUAN MILES | § | |
| v. | § | CIVIL ACTION NO. 6:20cv334 |
| BOBBY LUMPKIN, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Kojuan Miles, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil action under 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA) complaining of alleged deprivations of his rights. The case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Plaintiff sues TDCJ-CID Director Bobby Lumpkin, Coffield Unit Warden Kenneth Putnam, Coffield Unit Chaplain Allen Barker, and Coffield Unit Food Service Manager Homer Garza.

**I. The Plaintiff's Amended Complaint**

Plaintiff's amended complaint (docket no. 24) is the operative pleading in the lawsuit. In his amended complaint, Plaintiff states that his religious exercise is substantially burdened because inmates are provided with a pork free meal which is cross-contaminated, in that the pork free option of beans is placed right next to the pork insert on the serving line. He states that the food is not handled by professionals but rather by prisoners who are not compensated, which makes their efforts very poor. Thus, he says that "our pork free options are contaminated with pork almost daily as the likeliness of pork to spill over into our pork free options are high."

Plaintiff states while he may have "Muslim" designated on his travel card for purposes of religious services, he has "no designated placement with food service." He is in general population,

so he can go to the chow hall and receive a pork-free option, but if he were to be placed in administrative segregation for quarantine or disciplinary reasons, he is not provided this option upon immediate request, but must submit a request form which can take up to a week or two to be placed on a pork free list; thus, for those days following up to a response to this request, he would not receive a pork-free diet. He argues that his travel card should include a diet option as well as his religious preference so that his travel card would "correlate with food services" and not affect his religious beliefs. For relief, Plaintiff asks for an injunction to provide a halal diet.

## II. The Defendants' Motion for Summary Judgment

The Defendants have filed a motion for summary judgment stating that the TDCJ food service programs allows inmates to choose between a regular food tray, a pork-free tray, or a meat-free tray. They assert that Plaintiff lacks standing because he concedes that a pork-free diet is available and does not claim that he is being served pork; rather, Plaintiff contends that beans are placed in close proximity to pork and there is a possibility of contamination. Plaintiff also states that if he is placed in segregation, there may be a delay in receiving pork-free meals. The Defendants maintain that these claims are speculative because Plaintiff does not point to any instances where food served to him was actually contaminated by pork, and he is not in segregation and he has not shown a likelihood that he will ever be placed there.

The Defendants next argue that Plaintiff has not shown that his claims can be redressed by a favorable decision because they do not have the authority to provide halal meals to him, nor do they have the power to ensure that the food Plaintiff receives never touches other pieces of food; however, they state that the unit takes every effort in the preparation and serving of meals.

To the extent Plaintiff sues them in their individual capacities, the Defendants contend that RLUIPA does not recognize individual-capacity claims. After discussing monetary damages in the context of claims under the First Amendment, the Defendants argue that Plaintiff's First Amendment claims against them in their individual capacities are barred by qualified immunity.

The Defendants state that prisons need not respond to all individual religious dietary requests and that the dismissal of a claim concerning denial of kosher meals was affirmed in <u>Baranowski v. Hart</u>, 486 F.3d 112 (5th Cir. 2007). They contend that TDCJ meal policies do not impose a substantial burden upon the exercise of Plaintiff's religious beliefs because pork-free and meat-free options are available, and therefore these policies do not violate RLUIPA.

The Defendants attach as summary judgment evidence excerpts from the TDCJ Food Services Procedures Manual. This manual provides that inmates can select from one of three menu plans, including regular, meat-free, and pork-free, and the department head is responsible for planning menus and using progressive cooking to preserve nutrients, assure fresh products, and reduce overproduction.

The manual also provides that when meat or pork is served, there are three options to replace the item including (1) one ounce of sliced cheese, an additional four ounces of the beans being served, and an additional serving of bread; (2) a hard-boiled egg and a tablespoon each of peanut butter and jelly or one ounce of mixed peanut butter and jelly, plus an additional serving of bread, or (3) a tablespoon each of peanut butter and jelly or one ounce of mixed peanut butter and jelly, plus an additional serving of bread and an additional serving of beans.

**III. Plaintiff's Response to the Motion**

In his response to the motion, Plaintiff argues that his main argument is "a fact that cannot be disputed as a matter of law," specifically that kosher meals have been provided for Jewish prisoners, but halal meals have not been provided for Muslim prisoners. After disclaiming any intent to seek monetary damages, Plaintiff states that the Defendants do have authority to provide halal meals to him, as shown by the fact that Jewish inmates at the Stringfellow Unit and another unit receive kosher meals.

Next, Plaintiff states that "the defendant asserts that pork being served in a bean insert that is literally only an inch or less from the pork insert does not substantially burden my religious

exercise when pork is now being served in my meat substitute." He complains that "the contaminated bean insert" is his only meat substitute and goes on to state as follows:

> A pork free option is given when pork is served. A meat free option is given when beef, chicken, or fish is served. A pork free option is still considered a "meat free option" as it consists of the same things you receive within a "meat free option." A meat free option is given when pork is served as also a "meat free option" or in other terms a "pork free option." There is no selection of choice from "meat free" to "pork free" when it is seemingly the same thing.
>
> In being given only one alternative meal option, when pork is served we are subject to this only one cross-contaminated "pork free" pork option. We have no selection of a kosher diet option, nor a halal diet option when the Jewish prisoners within TDCJ are provided a pork free option and a kosher diet option, or in other terms a pork free option, a meat free option, and a kosher diet option. For the Jewish prisoners there exists no substantial burden on their religious exercise or even a probable burden as they are given a kosher diet that excludes pork contaminants in its entirety.

Plaintiff argues that his religious beliefs are violated through the provision of a kosher diet for Jewish inmates and a "contaminated pork free / meat free option" for Muslims. He contends that even if his allegations of cross-contamination are not taken as true, the Defendants still violate the law because his right to equal protection is being violated.

After a letter containing articles discussing Fifth Circuit case law, Plaintiff attaches a document of uncertain origin entitled "Kosher is not Halal." This document says that some foods in the United States, including foods exported to Muslim countries, may be certified as halal when in fact they are not. A number of alleged differences between halal and kosher foods are listed, including saying that foods containing alcohol as well as some types of cheese can be kosher but nor halal.

Plaintiff attaches a document discussing the brutality involved in slaughtering haraam broiler chickens as well as an affidavit from inmate Rosfel Garza, saying that he, Garza, has seen Plaintiff forced to eat under TDCJ policies violating his faith. Garza says that if there is a "pork chop or BBQ rib day" in the chow hall, there is no other place for Muslims to eat. He claims that there are no knives or forks and everyone eats by hand, which puts oil and grease on pitchers and salt and pepper containers, so Muslims cannot touch them. Garza also contends that the cooking of meats,

vegetables, and beans is all done by hand and "pork grease is everywhere." Plaintiff furnishes two declarations from himself, one of which says that TDCJ has an enhanced Jewish services program which provides a kosher kitchen, and the other says that he has seen "pork contaminants" in his beans for years at the Coffield Unit.

In a third declaration, Plaintiff states that he worked in the kitchen from April until August of 2019. He had to serve pork on many occasions, and "in such a rush of serving so many offenders it was impossible to not spill pork contaminants into the bean insets." In frustration, he states that he would often just not serve on the line when pork was served. Later, Plaintiff states he was moved to work in the P-1 kitchen in administrative segregation. There, he says the inmate workers heard many complaints about receiving pork-free trays, but the workers were told to tell the other prisoners to submit I-60 request forms to get on the pork free list. In August of 2019, Plaintiff states he was placed in administrative segregation himself, and in order to get a pork free tray, he had to submit a request form. His meals were nutritionally inadequate because he would not eat pork.

Next, Plaintiff submits a statement from inmate Jonathan Reynolds, who states that he has seen pork contaminants in the bean insert on more than one occasion. He says that the pork insert is placed less than an inch from the bean insert and that "on the days following up to August 20th, 2019," he was denied a pork free or meat free tray because he was told he would have to submit an I-60 request form and have it approved. Finally, a statement from inmate Roosevelt Hodge says that for years, he has seen pork contaminants in the pork substitute (beans) at the Coffield Unit.

**V. Legal Standards and Analysis**

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §2000cc-1(a), provides in pertinent part as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and

>  (2)  is the least restrictive means of furthering that compelling governmental interest.

*See* Brown v. Collier, 929 F.3d 218, 228–29 (5th Cir. 2019), *as revised* July 5, 2019.

Initially, it falls to the plaintiff to demonstrate that the government practice complained of imposes a substantial burden upon the plaintiff's religious exercise. In order to demonstrate a substantial burden, the plaintiff must show that the challenged action truly pressures him to significantly modify his religious behavior and significantly violate his religious beliefs. If the inmate makes this showing, the burden shifts to the government to show that its action or policy is the least restrictive means of furthering a compelling interest. Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004). The defendant's burden is not to show that it considered the claimant's proposed alternatives but rather to demonstrate that those alternatives are ineffective. Ali v. Stephens, 822 F.3d 776, 786 (5th Cir. 2016). In making this assessment, the court must give due deference to the experience and expertise of prison administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline consistent with consideration of costs and limited resources; however, the Supreme Court has made clear that even when prison regulations are at issue, RLUIPA requires courts to scrutinize the asserted harm of granting specific exemptions to particular religious claimants and to look to the marginal interest in enforcing the challenged governmental action in that particular context. Id., *citing* Holt v. Hobbs, 135 S.Ct. 853, 863, 190 L.Ed.2d 747 (2015).

The term "religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. §2000cc-5(7)(A). The Fifth Circuit has explained that Congress enacted RLUIPA to address "frivolous or arbitrary" barriers impeding the religious exercise of institutionalized persons. However, the courts are required to accord due deference to the experience and expertise of prison administrators. Davis v. Davis, 826 F.3d 258, 264 (5th Cir. 2016). Religious accommodations must not override other significant interests in maintaining order and safety, and the courts give deference to prison officials in

establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with considerations of costs and limited resources. Id. at 264-65. The Supreme Court has observed that costs, limited resources, and prison security are all compelling state interests. Cutter v. Wilkinson, 544 U.S. at 723; *see also* Baranowski, 486 F.3d at 125.

If the government successfully demonstrates a compelling interest as applied to the particular inmate, it must then show that its policy is the least restrictive means of achieving that interest. This is a particularly demanding standard, requiring the government to show that it lacks other means of achieving its desired goal other than the challenged policy. Holt, 135 S.Ct. at 864. RLUIPA requires a fact-intensive inquiry into the particular costs and risks that a requested exemption entails. Chance v. Texas Department of Criminal Justice, 730 F.3d 404, 418 (5th Cir. 2013).

Monetary damages are not available in claims under RLUIPA; instead, relief may be obtained only in the form of an injunction. Sossamon v. Texas, 563 U.S. 277, 285-88, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011). Similarly, there are no individual-capacity claims under RLUIPA. Id. The proper defendant in a RLUIPA case against the Texas Department of Criminal Justice - Correctional Institutions Division is the Director of that division. *See, e.g.*, Ali, 822 F.3d at 780. To the extent Director Lumpkin argues that he is not a proper defendant or he does not have authority to provide the relief sought, this contention is without merit.

In his complaint, Plaintiff specifically argues that "the substantial burden on my religious practice (exercise) is that we are provided a meat-free / pork-free meal as a substitute that is grossly contaminated (cross-contaminated) as the pork free option of beans is placed right next to the pork insert. The handling of our food is not applied by professionals, but by inmates (prisoners) who are not compensated with any funds to their asserts for their efforts, which then makes their catering efforts very poor. Our pork free options are contaminated with pork almost daily as the likelihood of pork to spill over into our pork free options are high."

Thus, Plaintiff complains that his religious exercise is substantially burdened by the careless handling of the food, which can result in a high likelihood of contamination, and which may have

done so on multiple although unspecified occasions. The courts have consistently held that allegations of isolated incidents or negligence do not set out a viable claim under RLUIPA because such incidents do not impose a substantial burden upon the exercise of religious faith. *See, e.g.*, Abdulhaseeb v. Calbone, 600 F.3d 1301, 1321 (10th Cir. 2010) (receiving Jell-O and pudding on a dinner tray, which inmate claimed violated religious dietary restrictions and thereby rendered all the food on the tray inedible, was not a RLUIPA violation because it was an isolated incident); Lovelace v. Lee, 472 F.3d 174, 194 (4th Cir. 2006) (RLUIPA is not intended to remedy negligent violations of inmates' religious practices); Morgan v. Patterson, civil action no. 2:17cv160, 2017 U.S. Dist. LEXIS 217833, 2017 WL 7732439 (S.D.Tex., August 8, 2017), *Report adopted at* 2018 U.S. Dist. LEXIS 25414, 2018 WL 942458 (S.D.Tex., February 15, 2018), *aff'd*, 772 F.App'x 117, 2019 U.S. Dist. LEXIS 17538, 2019 WL 2474115 (5th Cir., June 12, 2019). Because Plaintiff has not shown a RLUIPA violation in the fact that pork inserts being placed near bean inserts could possibly result in contamination through carelessness, the Defendants' motion for summary judgment should be granted in this regard.[1] *See also* Strope v. Cummings, 381 F.App'x 878, 2010 U.S. App. LEXIS 11806, 2010 WL 2294524 (10th Cir., June 9, 2010) (prisoner's complaints that meals served on June 27, June 30, July 4, July 11, July 14, and July 16, 2005 did not comport with his need for a kosher diet, and a general allegation that kosher meals were less varied than regular meals, had a paucity of seasonal fruits and vegetables, had wilted or rotten items on occasion, and lacked certain items found on the regular menu, were scattered and minor complaints which were insufficient to show a substantial burden on his religious exercise).

---

[1] Similarly, isolated incidents have been held not to violate the First Amendment's guarantee of free exercise of religion. Morgan v. Patterson, 772 F.App'x 117, 2019 U.S. App. LEXIS 17538, 2019 WL 2474115 (5th Cir., June 12, 2019) (isolated incidents of denial of kosher meals did not set out a First Amendment claim); Rapier v. Harris, 172 F.3d 999, 1006 (7th Cir. 1999) (failure to provide a pork-free tray on three occasions did not violate inmate's right to free exercise of his religion); Colvin v. Caruso, 605 F.3d 282, 287 (6th Cir. 2010) (occasional receipt of non-kosher food was not a violation of 42 U.S.C. §1983).

These cases comport with the general rule that claims of negligence are not generally viable under RLUIPA. Lovelace , 472 F.3d at 194; Hamilton v. Countant, civil action no. 13-cv-669, 2016 U.S. Dist. LEXIS 25329, 2016 WL 881126 (S.D.N.Y, March 1, 2016). Plaintiff's claim of potential food contamination through carelessless or negligence on the part of inmate servers does not set out a viable RLUIPA claim.

In his response to the motion for summary judgment, Plaintiff complains that TDCJ provides kosher diets for Jewish prisoners but not halal diets for Muslim prisoners, apparently in violation of the Equal Protection Clause. To the extent that this claim may be considered as part of his lawsuit despite not having been asserted in his complaint, *see* Cutrera v. Board of Supervisors of Louisiana State University, 429 F.3d 108, 113 (5th Cir. 2005), Plaintiff has failed to show a violation of equal protection. In order to set forth such a claim, Plaintiff must show that the serving of kosher entrees but not halal ones was motivated by intentional or purposeful discrimination. Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 816 (8th Cir. 2008); Hearn v. Kennell, 433 F.App'x 483, 2011 U.S. App. LEXIS 16866, 2011 WL 3555426 (7th Cir. 2011); *see also* Adkins, 393 F.3d at 566 (rejecting inmate's Equal Protection claim because the inmate failed to "prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated"); Muhammed v. Sapp, 388 F.App'x 892, 2010 U.S. App. LEXIS 15175, 2010 WL 2842756 (11th Cir. 2010). Plaintiff does not allege, much less show, that the Defendants were motivated by intentional or purposeful discrimination in serving kosher but not halal meals. His claim on this point is without merit.

In addition, Plaintiff has not shown an equal protection violation in that he has not demonstrated disparate treatment among persons "similarly situated." While it is true that inmates at the Stringfellow Unit have access to meals prepared in a kosher kitchen, *see* Moussazadeh v. TDCJ, 703 F.3d 781, 786 (5th Cir. 2012), Plaintiff is not similarly situated to them because he is not at that unit; rather, he was at the Coffield Unit at the time he filed his lawsuit. The Fifth Circuit has held that Texas prisoners are not similarly situated to inmates at other units, but only those at the units where they are located. Muhammed v. Lynaugh, 966 F.2d 901, 903 (5th Cir. 1992).

Plaintiff does not allege, much less show, that Jewish inmates at the Coffield Unit have access to food prepared in a kosher kitchen. His equal protection claim lacks merit on this basis as well.

Plaintiff further asserts that if he is placed into administrative segregation for quarantine or disciplinary reasons, he will have to submit an I-60 inmate request form in order to be placed on a pork free diet list, and the sack meals he receives would likely be pork-free until the request is processed, in about one to two weeks. The Defendants argue that this claim is conclusory, speculative, and too attenuated to provide relief because placement in segregation is a situation which may arise in the future, not one which has already occurred, and such placement is primarily based on Plaintiff's actions and behavior while incarcerated. Plaintiff does not specifically reply to this contention in his response, but simply asserts again that Muslims must take pork trays when placed in segregation until they are approved for a pork free list.

As the Defendants contend, Plaintiff's claim that he might some day be placed in segregation, and that he might receive pork meals in segregation while waiting for paperwork to process, is too conjectural to afford a basis for injunctive relief. In order to seek injunctive relief, a plaintiff must show that he is under a threat of injury which is actual and imminent, not conjectural or hypothetical. Summers v. Earth Island Institute, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009); *see also* Coleman v. Lincoln Parish Detention Center, 959 F.3d 307, 309 (5th Cir. 2017) (possibility of a transfer back to the parish detention center was too speculate to warrant relief under RLUIPA); Knox v. McGinnis, 998 F.2d 1405, 1413 (7th Cir. 1993) (possibility that inmate could return to segregation was insufficient to show standing to seek injunctive relief for conditions in segregation), *citing* City of Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Similarly, Plaintiff cannot seek injunctive relief for circumstances in segregation when it is purely speculative whether he will ever be placed into segregation; the fact that he was placed in segregation three years ago has no bearing on whether he ever may be again. His claim on this point is without merit. Id. at 102, *citing* O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38

L.Ed.2d 674 (1974) (past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects).

To the extent that Plaintiff raises claims under the Free Exercise Clause of the First Amendment, such claims necessarily lack merit because he has not shown a violation of RLUIPA and RLUIPA imposes a more stringent standard than the First Amendment. Patel, 515 F.3d at 813; Mayfield v. Texas Department of Criminal Justice, 529 F.3d 599, 612 (5th Cir. 2008). Thus, the courts have held that a policy which passes muster under RLUIPA will necessarily satisfy the requirements of the First Amendment. Charles v. Frank, 101 F.App'x 634, 2004 U.S. App. LEXIS 11541, 2004 WL 1303403 (7th Cir., June 9, 2004); *accord*, Jones v. Shabazz, 352 F.App'x 910, 2009 U.S. App. LEXIS 24308, 2009 WL 3682569 (5th Cir., November 5, 2009).

In any event, claims of negligence or carelessness resulting in Plaintiff occasionally being served pork will not support liability under the First Amendment. *See* Eason v. Thaler, 73 F.3d 1322, 1327 and n.2 (5th Cir. 1996) (mistake in serving meal with pork to an inmate whose diet was to be pork free was negligence and thus not a First Amendment violation); Bryant v. Davis, civil action no. 6:18cv395, 2019 U.S. Dist. LEXIS 170166, 2019 WL 4781362 (E.D.Tex., August 8, 2019), *Report adopted at* 2019 U.S. Dist. LEXIS 168149, 2019 WL 4747042 (E.D.Tex., September 27, 2019); *see also* Gallagher v. Shelton, 587 F.3d 1063, 1070 (10th Cir. 2009). While the First Amendment guarantees prisoners a reasonable opportunity to practice their faith, *see* Pedraza v. Meyers, 919 F.2d 317, 320 (5th Cir. 1990), none of the circumstances asserted by Plaintiff amount to a denial of a reasonable opportunity to practice his faith, and he has not pointed to any policies imposing a restriction of such opportunities. His First Amendment claim is without merit.

**VI. Conclusion**

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Burleson v. Texas Department of Criminal Justice, 393 F.3d 577, 589 (5th Cir. 2004). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. Id., *citing* Allen v. Rapides Parish School Board, 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. Boudreaux v. Swift Transportation Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Prison Legal News v. Livingston, 683 F.3d 201, 211 (5th Cir. 2012).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. Adams v. Traveler's Indemnity Co., 465 F.3d 156, 164 (5th Cir. 2008). Instead, a party opposing summary judgment must identify specific evidence in the record that supports the challenged claims and articulate the precise manner in which that evidence supports the challenged claim. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A review of the pleadings and summary judgment evidence in this case shows that there are no disputed issues of material fact and the Defendants are entitled to judgment as a matter of law. As a result, the Defendants' motion for summary judgment should be granted.

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion for summary judgment (docket no. 38) be granted and the lawsuit dismissed with prejudice.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See* Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 1st day of July, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE